ALLEN, Appellee,

v.

UNIVERSITY OF CINCINNATI HOSPITALS, Appellee; Mershon, Appellant.

[Cite as *Allen v. Univ. of Cincinnati Hosp.* (1997), 122 Ohio App.3d 195.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97API03–312.

Decided Aug. 5, 1997.

John Derek Good, for appellee Robin Allen.

Betty D. Montgomery, Attorney General, and Marilena R. Walters, Assistant Attorney General, for appellee University of Cincinnati Hospitals.

Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Karen L. Clouse and David C. Calderhead, for appellant John L. Mershon, M.D.

BOWMAN, Judge.

Appellant, John L. Mershon, M.D., is an instructor of clinical obstetrics and gynecology and research fellow employed by the University of Cincinnati College of Medicine ("university"). He is also employed by University Ob/Gyn Associates, Inc., the practice plan of his department at the university.[1] On February 13, 1994, appellant was the on-call attending physician when appellee, Robin Allen, gave birth to a healthy child at appellee, the University of Cincinnati Hospital ("hospital"). The delivery of the infant was performed by a resident, Lloyd W. Rettig, M.D. On March 6, 1994, Allen was readmitted to the hospital for a dilatation and curettage procedure, which was performed by another resident, David Aichholz, M.D. Appellant once again was the supervising physician attending to her care.

On August 31, 1995, Allen was diagnosed with Asherman's syndrome. On April 25, 1996, Allen filed a complaint in the Court of Claims against the hospital, asserting that the care and treatment she received fell below the applicable

---

1. Each department of the College of Medicine is required to have a practice plan through which faculty members must provide care and treatment at the clinics and hospital of the university. Each practice plan is approved by the Dean of the College of Medicine, who ensures that its operation is consistent with the mission of the College of Medicine. Each faculty member's salary includes money paid by the university and the practice plan.

standard of care and proximately caused her injury. On August 23, 1996, Allen filed a companion case against appellant in the Hamilton County Court of Common Pleas, asserting that appellant, and his employers, had a duty to provide proper medical care to her, that the duty was breached and that, as a result of the breach, she suffered damages.

After a status conference was held in the Court of Claims, the parties agreed to brief for the court the issue of whether appellant was entitled to immunity, pursuant to R.C. 9.86 and 2443.02(F), in lieu of having a hearing. After reviewing the parties' briefs, affidavits, and this court's decision in *Harrison v. Univ. of Cincinnati Hosp.* (June 28, 1996), Franklin App. No. 96API01–81, unreported, 1996 WL 362055, the Court of Claims determined that appellant was not entitled to personal immunity and that the court of common pleas had jurisdiction over the claims against him. Appellant now brings this appeal, asserting the following assignments of error:

"The Court of Claims erred by failing to hold that a physician employed as a faculty member at a state university college of medicine is entitled to immunity from personal liability in a medical negligence action pursuant to O.R.C. Section 9.86 and Section 2743.02 when the physician's involvement in the patient's care and treatment is as a faculty member teaching or supervising resident physicians.

"A.   Pursuant to the terms of Dr. Mershon's employment with the University of Cincinnati, as established by the university's board of trustees and the College of Medicine, Dr. Mershon was acting as a state employee at all times relevant to the allegations in the complaint.

"B.   The case law regarding a physician's immunity from personal liability established that, under the facts and circumstances of this case, Dr. Mershon is entitled to immunity from suit."

In his assignment of error, appellant asserts that the trial court erred in determining that he was not entitled to personal immunity, since he only saw Allen in his capacity as a faculty member training and supervising resident physicians and, but for his being on call when she presented herself for care at the hospital, he would not have been involved in her treatment. As a result, when appellant saw Allen, he was functioning in his capacity as an employee of the university and not in a private capacity. Appellee has not filed a brief. App.R. 18(C) provides in part:

" * * * If an appellee fails to file his brief within the time provided by this rule, * * * in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

In reaching its decision that appellant was not entitled to immunity, the Court of Claims relied on *Harrison*. In *Harrison*, the physician in question, Dr. Tami, was employed by both the University of Cincinnati and University Ear, Nose and Throat Specialists, Inc. ("UENTS"), a practice plan which is a corporation for the provision of patient care. Tami performed radical neck surgery on Renate Mueller, which he would not have performed had he read prior to the surgery a pathology report, indicating Mueller's condition was non-Hodgkin's lymphoma of the tonsil.

Mueller filed a complaint against Tami seeking a determination as to whether Tami was immune from liability as a state employee. The Court of Claims ruled that Tami was acting within the scope of his employment in the performance of his duties for the state when he treated Mueller. On appeal, this court stated that the question before the Court of Claims was not whether Tami was an officer or employee of the state but, rather, whether Tami acted outside the scope of his employment or official responsibilities when he treated Mueller. This court found that, although Tami was employed by both the university and UENTS, his treatment of Mueller was in the course of his employment with UENTS, since UENTS billed Mueller for the surgery and collected payment for the surgery. This court also found that simply being a member of the university's practice group was not determinative of the issue regarding the scope of employment. This court then found that Tami was acting outside the scope of his employment with the university when he performed surgery on Mueller and, thus, Tami was not entitled to statutory immunity.

This court finds that, in this case, the Court of Claims' reliance on *Harrison* was misplaced. In *Harrison*, Tami saw Mueller as a private patient and UENTS, Tami's practice group, billed for his services. In the case before us, there is no evidence in the record that appellant ever saw Allen as a private patient; rather, the evidence shows that appellant saw her only in his capacity as the hospital's on-call physician supervising residents, and it was just coincidence that he was the on-call physician both times when she presented herself for care at the hospital.

When the parties in this case briefed the immunity issue for the Court of Claims, this court had recently decided *Harrison;* however, since that time, this court rendered an opinion in *Norman v. Ohio State Univ. Hosp.* (1996), 116 Ohio App.3d 69, 686 N.E.2d 1146. While *Norman* is not in conflict with *Harrison*, the facts in *Norman* appear to be similar to the facts in this case. Therefore, this court finds that the Court of Claims should analyze the facts of this case in accordance with *Norman* to resolve the immunity issue.

Accordingly, appellant's assignment of error is sustained. The judgment of the Court of Claims is reversed, and this cause is remanded for further proceedings consistent with this decision.

*Judgment reversed
and cause remanded.*

JOHN C. YOUNG and CLOSE, JJ., concur.