DECISION
Defendant-appellant, the University of Cincinnati ("UC"), appeals from the June 3, 1999 judgment entry of the Ohio Court of Claims that Kenneth Davis, M.D., Frederick Luchette, M.D., Aaron Weinstein, M.D., and Martin Mitchell, M.D., were not entitled to personal immunity pursuant to R.C. 9.86 and 2743.02(F). For the reasons that follow, we reverse the judgment of the Court of Claims.
On April 6, 1997, plaintiff-appellee's decedent, Ronnye Hopper, was involved in a head-on collision in Clermont County. She was transported to University Hospital in Cincinnati via Air Care. Hopper suffered numerous injuries including liver laceration and severe pelvic and leg fractures. Trauma surgeon Dr. Kenneth Davis was on call that day and became her attending physician. Dr. Davis performed several surgeries on Hopper with the assistance of three residents. Hopper was billed for Dr. Davis' services by his practice group, University Surgical Group of Cincinnati, Inc. ("USGC").
Due to the type and severity of Hopper's injuries, Dr. Davis determined that Hopper was at risk for a pulmonary embolism. Accordingly, Dr. Davis decided to install a Greenfield filter in the inferior vena cava to trap blood clots and reduce the chances of Hopper suffering a pulmonary embolism. A scheduling conflict arose, and Dr. Davis was unable to perform or supervise the procedure, so he asked his colleague, Dr. Frederick Luchette, to fill in for him.
Dr. Luchette supervised and guided Dr. Timothy Pritts, a surgical resident, through the procedure on April 10, 1997. The patient was not billed for Dr. Luchette's services although Dr. Luchette is also a member of USGC.
Following that surgery, Hopper was x-rayed a number of times. Dr. Aaron Weinstein, a staff radiologist, was in the habit of arriving at the hospital at 5:00 a.m., to go over films with the resident who had been on duty the previous night. Dr. Weinstein's practice was to read the films and discuss them with a resident who would then dictate a report. The dictated report was considered preliminary but was available on computer. The report would then be approved by a more senior resident and verified by a staff radiologist. The report was not considered final until verified by a staff radiologist.
On April 10, 1997, Dr. Weinstein read Hopper's abdominal x-ray along with Dr. Reinhart, a resident. The report stated in pertinent part: "There is a Greenfield filter in place as well. This is centered over the L4 region." Dr. Weinstein's practice group, University Radiology Associates, Inc. ("URA"), billed Hopper $52 for Dr. Weinstein's services that day.
On April 14, 1997, Dr. Richard Pergolizzi, a resident, read a pelvic x-ray of Ronnye Hopper. Dr. Martin Mitchell, a radiologist, reviewed and discussed the x-ray with the resident. Dr. Mitchell verified the report on April 17, 1997. Under the section headed "Findings," the report stated, in pertinent part: "There has also been interval placement of an IVC [inferior vena cava] filter which is low in appearance, the feet projecting at the top of L5." Under the section headed "IMPRESSION," the report stated, in pertinent part, "LOW IVC FILTER PLACEMENT AS DESCRIBED ABOVE WHICH MAY BE PLACED WITHIN THE RIGHT PROXIMAL COMMON ILIAC VEIN." Dr. Mitchell did not call this finding to the attention of Dr. Davis or Dr. Luchette, or any other surgeon. URA billed Hopper $26 for Dr. Mitchell's services that day. Hopper was eventually transferred to the Drake Rehabilitation Center, Inc., where she died on May 4, 1997. Deputy Coroner John Gerber, M.D., conducted an autopsy. Dr. Gerber was of the opinion that the cause of death was pulmonary saddle thromboembolus due to multiple blunt force injuries to torso and lower extremities. His report also noted there was a Greenfield filter in the right common iliac vein.
On June 24, 1998, appellee, Kendall Hopper, administrator of the estate of Ronnye Hopper and on behalf of himself as administrator, individually, and on behalf of his three minor children, brought an action for wrongful death and survivorship in the Ohio Court of Claims alleging that Hopper's death directly resulted from medical negligence committed by the four physicians discussed above. The complaint alleged negligence in the placement of the Greenfield filter in the right iliac vein instead of the inferior vena cava, resulting in a fatal pulmonary embolism. The complaint also alleged negligence in follow-up care and in failure to take corrective measures after it was discovered the Greenfield filter was improperly placed.
After hearing argument and reviewing the evidence and written briefs, the trial court determined that none of the four doctors were entitled to personal immunity pursuant to R.C. 9.86
and 2743.02(F). The trial court found that each of the four doctors received a small salary from UC, but received the major portion of his income from his respective practice group. The trial court also found that Hopper was treated as a private patient and billed by each practice group. The trial court also found that Hopper was never advised that any of her doctors were claiming to be employees of UC. The trial court also expressed its opinion that it did not believe taxpayers should be responsible for the malpractice, if any, of the four doctors.
UC appealed, assigning as error the following:
ASSIGNMENT OF ERROR NO. 1
 The Court of Claims erred, to the prejudice of appellant, in finding that Aaron Weinstein, M.D. is not entitled to immunity under R.C. 9.86.
ASSIGNMENT OF ERROR NO. 2
 The Court of Claims erred, to the prejudice of appellant, in finding that Martin Mitchell, M.D. is not entitled to Immunity under R.C. 9.86.
ASSIGNMENT OF ERROR NO. 3
 The Court of Claims erred, to the prejudice of appellant, in finding that Kenneth Davis, M.D. is not entitled to immunity under R.C. 9.86
ASSIGNMENT OF ERROR NO. 4
 The Court of Claims erred, to the prejudice of appellant, in finding that Frederick Luchette, M.D. is not entitled to immunity under R.C. 9.86.
A determination as to whether or not a state employee is entitled to personal immunity is governed by R.C. 2743.02(F) and 9.86. R.C. 2743.02(F) provides, in pertinent part:
 A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
R.C. 9.86 states, in part:
 * * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
The question of whether the doctors are entitled to immunity is a question of law. Nease v. Medical College Hosp.
(1992), 64 Ohio St.3d 396, 400, citing Conley v. Shearer (1992),64 Ohio St.3d 284, 292. However, the question of whether the doctors acted manifestly outside the scope of their employment is a question of fact. See Lowry v. Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835, unreported; Tschantz v.Ferguson (1989), 49 Ohio App.3d 9.
Initially, UC argues that, as the employer of the four doctors, UC defined the scope of its employees' duties to include patient care as part of the mission of the university. At the time the parties briefed this case, they did not have the benefit of our decision in Lynd v. Univ. of Cincinnati (Nov. 23, 1999), Franklin App. No. 99AP-37, unreported. We believe this court's decision in Lynd is dispositive of this issue. "While the university's definition of an employee's duties is one factor to consider in each case, it is the responsibility of the Court of Claims, pursuant to R.C. 2743.02(F), to determine whether the state employee is entitled to personal immunity." Id. See, also,Garvin v. State of Ohio d/b/a Univ. of Cincinnati Hospital (May 21, 1998), Franklin App. No. 97API09-1279, unreported ("UC, by its assignment of duties to faculty members, may not determine whether a particular faculty member is a state employee or acting within the course and scope of his employment"). Thus, we must consider whether the four physicians treated the patient in their capacity as employees of the University Hospital supervising residents, or as physicians in private practice. See Chitwood v. Univ. Med.Ctr. (May 5, 1998), Franklin App. No. 97API09-1235, unreported;Ferguson v. The Ohio State Univ. Med. Ctr. (June 22, 1999), Franklin App. No. 98AP-863, unreported.
The trial court found the instant case to be controlled by its decision in Thomas v. Lynd (Dec. 3, 1998), Franklin Ct. of Cl. No. 97-13242, unreported. However, the facts in Lynd
were quite different from the facts in this case. In Lynd, the patient was referred by his private physician who, in turn, referred the patient to the allegedly negligent physician, Dr. Sherman. Moreover, there was no evidence in Lynd that Dr. Sherman was supervising residents or medical students while rendering patient care. Here, however, the patient was admitted through the emergency room and all of the doctors were involved with teaching or supervising residents while they rendered patient care services.
Appellee contends that when Drs. Mitchell, Weinstein, Davis, and Luchette are teaching, researching, or performing administrative duties, they are acting as employees of UC, but when they are providing patient care, they are doing so as employees of URA or USGC. The facts of this case belie such a contention. The radiologists described a situation in which a resident first reviewed films. Then, Dr. Mitchell or Dr. Weinstein and the resident would discuss the case and talk about the findings. The resident would then dictate the report. Similarly, a resident installed the Greenfield filter under the direction and supervision of Dr. Luchette. Under these facts, while providing patient care the doctors were treating Hopper in their capacity as employees of the University Hospital supervising residents, rather than as physicians in private practice. Accord,Allen v. Univ. of Cincinnati Hosp. (1997), 122 Ohio App.3d 195;Chitwood, supra.
Apart from the actual surgery, and the reading of x-rays, appellee also claims three of the four physicians were negligent with respect to follow-up care following placement of the Greenfield filter. Appellee contends that Dr. Luchette was negligent in that he failed to review Dr. Mitchell's x-ray report of April 17, 1997, which revealed the Greenfield filter was not properly placed in the inferior vena cava. Appellee also notes that Dr. Luchette's practice group, USGC, billed Hopper for that follow-up care. Appellee also alleges Dr. Mitchell was negligent for failing to call the x-ray findings to the attention of any surgeon. Appellee contends Dr. Davis, as Hopper's attending physician, was negligent in failing to monitor the care rendered to Hopper, for which USGC billed Hopper.
UC suggests that, if alleged negligence in the follow-up care is a separate basis for liability claims against Dr. Luchette and if Dr. Luchette's status turns on whether his practice group billed for his services, Dr. Luchette should be entitled to a separate immunity determination on that phase of his involvement. We disagree.
An employee is not liable for damage or injury unless his or her conduct is manifestly outside the scope of his or her employment.
We do not read this statute as requiring the Court of Claims to break down the employee's conduct and make minute-by-minute determinations as to whether an employee's actions were manifestly outside the scope of his or her employment or responsibilities. Nor should Dr. Luchette's status turn on billing practice. As this court noted in Ferguson v. Ohio StateUniv. Med. Ctr. (June 22, 1999), Franklin App. No. 98AP-863, unreported, billing may be a relevant factor, but it is not always determinative in deciding whether a physician is acting within the scope of his duties as a private physician or as an employee of a university at the time he or she rendered medical services to a patient. This is particularly true in cases where the doctor does not otherwise see patients outside the emergency department. Under these facts, the mere fact that the practice groups billed for the physicians' services is not determinative of the issue of immunity.
Based on the foregoing, the assignments of error are sustained, and the judgment of the Ohio Court of Claims is hereby reversed and remanded for further proceedings in accordance with this decision.
DESHLER and KENNEDY, JJ., concur.