**LIEURANCE, Co–Exr., et al.**

v.

**UNIVERSITY OF CINCINNATI.**

Court of Claims of Ohio.

No. 99–07134.

Decided Aug. 27, 2001.

10

*Steven A. Lieurance, pro se.*

*Daniel J. Buckley* and *Rodney L. Drinnon;* and *James P. Miller,* for plaintiff, David B. Lieurance.

*Betty D. Montgomery,* Attorney General, and *Susan M. Sullivan,* Assistant Attorney General, for the state.

FRED J. SHOEMAKER, Judge.

This matter is before the court to determine whether Peter Dain, M.D., is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. The matter was submitted on briefs and stipulated evidence in lieu of an evidentiary hearing.

At all times relevant to this action, Dr. Dain was employed by defendant, University of Cincinnati ("UC"), as an instructor, and later as Associate Professor of Clinical Medicine in the College of Internal Medicine. During this same time period, Dr. Dain was also employed by University Internal Medicine Associates ("UIMA"), a private, nonprofit corporation.

There is no assertion that Dr. Dain acted with malice, in bad faith, or in a wanton or reckless manner in his treatment of decedent Opal Lieurance.[1] Therefore, the sole issue before the court is whether Dr. Dain was acting within the scope of his state employment with UC when the alleged injury occurred.

R.C. 2743.02(F) states:

"A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer

---

1. "Lieurance" will be used throughout this decision to refer to the decedent.

or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

R.C. 9.86 states:

"[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

The determination of whether a physician is entitled to personal immunity is a question of law. *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 400, 596 N.E.2d 432, 435, citing *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 595 N.E.2d 862. The question of whether the physician acted manifestly outside the scope of his state employment is one of fact. *Lowry v. Ohio State Hwy. Patrol* (Feb. 27, 1997), Franklin App. No. 96AP107–835, unreported, 1997 WL 84656, at * 5.

In *Ferguson v. Ohio State Univ. Med. Ctr.* (June 22, 1999), Franklin App. No. 98AP–863, unreported, 1999 WL 410247, the court set forth indicia that may be considered in determining whether a physician is entitled to civil immunity. The factors can be divided into two basic categories: those that focus on the nature of the work being performed by the physician at the time period in question and those that concern the nature of the relationship between the private practice group and the state entity. That court also stated that one of the key questions is whether the physician saw the patient only in the capacity as an attending physician supervising residents or saw that individual as a private patient. *Id.* at * 3. It has repeatedly been held that physicians are entitled to civil immunity when their only contact with a patient is in their capacity as faculty physicians supervising residents. See, *e.g., Allen v. Univ. of Cincinnati Hosp.* (1997), 122 Ohio App.3d 195, 198, 701 N.E.2d 443, 445; *Norman v. Ohio State Univ. Hosp.* (1996), 116 Ohio App.3d 69, 77–78, 686 N.E.2d 1146, 1151–1152; *Chitwood v. Univ. Med. Ctr.* (May 5, 1998), Franklin App. No. 97AP109–1235, unreported, 1998 WL 226938, at * 2.

In the present case, Lieurance was assigned to and treated by Dr. Dain at Drake Center, Inc. ("Drake") from February 20 to March 21, 1997. She was admitted for rehabilitative therapy following a coronary artery bypass graft, aortic valve replacement, and mitral valvuloplasty. Plaintiffs' complaint alleges

that defendant failed properly to treat plaintiff's pressure sores and that such failure ultimately led to a fatal infection. In his deposition, Dr. Dain stated that it was the generally accepted practice for patients to be seen at least three times per week. However, there were occasions when he saw Lieurance multiple times during a given day. While resident physicians could perform services at Drake, they were not always present when Dr. Dain attended to Lieurance.

Drake is a nonprofit hospital funded by Hamilton County. Neither UC nor the Division of General Internal Medicine had a contract with Drake. However, UIMA had an agreement with Drake to provide internal medicine services. According to Dr. Dain's deposition, his agreement with UIMA required that he spend seventy percent of his time at Drake, ten percent of his time at the University Hospital seeing patients and teaching residents ten percent of his time "scattered" among a wide variety of places, and, the remaining ten percent "more often than not" spent at Drake. UIMA was not required to contract only with state entities. Further, not all UIMA physicians were UC faculty members, and not all Drake physicians were associated with UIMA.

Dr. Dain was recruited by Robert Wones, M.D., the Director of the Department of General Internal Medicine, to serve as an attending physician at Drake. Dr. Wones testified that he simply could not employ physicians for Drake at the $20,000 annual salary provided by UC. In Dr. Dain's case, the combined salary received from UC and UIMA was $129,043 for 1997. Of that amount, $99,717 was paid by UIMA. Dr. Dain also received a $4,500 "Drake bonus." The salary received from UC was paid separately. In addition, UIMA maintained a 401(k) retirement account for its employees, whereas UC paid into the State Teachers Retirement System. Medical malpractice insurance was provided by UIMA.

Notwithstanding the aforementioned facts, defendant maintains that Dr. Dain's clinical practice was an integral part of his UC employment. Defendant likens this case to *Garvin v. Univ. of Cincinnati Hosp.* (May 21, 1998), Franklin App. No. 97AP109–1279, unreported, 1998 WL 255557, wherein the Tenth District Court of Appeals held that Dr. Sigmund, another UIMA physician, was entitled to civil immunity. In that case, the court relied primarily upon "the absence of any evidence showing the relationship between UIMA and UC to be one of an independent contractor, or that Dr. Sigmund directly profited from the fees generated through the services he provided through UIMA." *Id.* at * 3.

The court finds that the instant case is factually distinguishable from *Garvin*, since there was little or no evidence in that case about how Dr. Sigmund came to be assigned to plaintiff's case, nor was there any evidence that he was employed at a completely separate institution such as the Drake Center at issue herein. The preponderance of the evidence in this matter simply fails to establish that Dr. Dain was fulfilling any professorial or teaching function for UC when he

provided the patient care in question. Further, in this case, evidence does exist that Dr. Dain "directly profited" from the services he provided through UIMA, since he received a separate "Drake bonus."

Defendant further maintains that the General Assembly has conferred broad discretion upon the UC board of trustees to hire professors and that such discretion implicitly includes the ability to define the scope of employment. In this case, it is defendant's position that "scope of employment" is expressly defined by the board of trustees as including the patient care provided by Dr. Dain at Drake hospital. However, the court in *Garvin* noted that the board of trustees may not, by its assignment of duties to faculty members, determine whether a particular physician is functioning within the scope of state employment. *Id.* at * 2. To hold otherwise would be to circumvent the entire purpose of R.C. 2743.02(F) and 9.86.

Accordingly, the court concludes that Dr. Dain treated Lieurance as a private patient, and, as such, he is not entitled to civil immunity.

### Judgment Entry

Upon review of the evidence, and for the reasons set forth in the decision filed concurrently herewith, the court finds that Dr. Peter Dain is not entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. Therefore, the courts of common pleas have jurisdiction over civil actions against him based upon Dr. Dain's alleged actions and inactions in this case. Pursuant to Civ.R. 54(B), this court makes the express determination that there is no just reason for delay.

*Judgment accordingly.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.