OPINION
This is an appeal by plaintiffs-appellants, Homer C. and Laura Smith, from a judgment of the Ohio Court of Claims finding defendant, Rino Munda, M.D., immune from liability pursuant to R.C. 9.86. On March 5, 1999, Homer Smith, Jr., had a kidney and pancreas transplant at University Hospital in Cincinnati, Ohio. Munda was the surgeon and he was assisted by Frederick Valente, M.D. In addition, a surgery fellow, Dennis Cohen, M.D., and a surgery resident, Ryan Martin Moon, were present during the procedure. Prema Venkateswaran, M.D., S. Bridgette Koegler, M.D., and Joan Beiersdorfer, CRNA, provided anesthesia. Following surgery, Smith suffered parathesis and loss of sensation in both of his arms due to an injury to his brachial plexus from improper positioning during the surgery.
The Smiths filed a claim in both the Ohio Court of Claims and the Hamilton County Court of Common Pleas against the State of Ohio, University Hospital, Inc., Cohen, Moon, University Surgical Group of Cincinnati, Inc., Munda, Valente, University Anesthesia Associates, Inc., Venkateswaran, Koegler, Beiersdorfer, and John Does 1-20. Later, Mary Clare Hasenkamp, another anesthesiologist, was added to the action in place of John Doe 1.
The trial court held a non-oral evidentiary hearing and found Munda, Valente, Venkateswaran, Koegler and Beiersdorfer were employees of appellee, the University of Cincinnati ("UC"), during all relevant times. The court found that Munda was acting within the course and scope of his state employment as a UC professor of surgery during the transplant surgery and is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. However, the court found that Valente, Venkateswaran, Koegler and Beiersdorfer were not acting within the course and scope of their state employment during the surgery and are not entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. The court reserved ruling on immunity for Cohen, Moon and Hasenkamp until a later date.
Venkateswaran, Koegler and Beiersdorfer filed a notice of appeal and the Smiths filed a notice of cross-appeal. UC filed a motion to dismiss both appeals. This court granted the motion to dismiss concerning the appeal of Venkateswaran, Koegler and Beiersdorfer finding they did not have standing to appeal but denied the motion concerning the Smiths' appeal finding it was a final, appealable order. At issue is appellants' appeal and they raise the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING IMMUNITY TO RINO MUNDA, M.D. PURSUANT TO O.R.C. § 9.86.
By the assignment of error, appellants contend that the trial court erred in finding that Munda was entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. R.C. 2743.02(F) provides, in pertinent part:
 (F) A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
R.C. 9.86 provides:
 * * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
In order to be entitled to personal immunity under the above statutes, one must be an employee or officer. R.C. 109.36(A) defines officer or employee as:
 (A) * * * [A]ny person who, at the time a cause of action against him arises, is serving in an elected or appointed office or position with the state; is employed by the state; is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract with a department, agency, or institution of the state; or is rendering medical services to patients in a state institution operated by the department of mental health, is a member of the institution's staff, and is performing the services pursuant to an agreement between the state institution and a board of alcohol, drug addiction, and mental health services described in section 340.021 of the Revised Code. Officer or employee does not include any person elected, appointed or employed by any political subdivision of the state.
The determination as to whether or not a person is entitled to immunity under R.C. 2743.02(F) and 9.86 is a question of law. Nease v. Medical College Hosp. (1992), 64 Ohio St.3d 396, 400. While the issue of immunity is a question of law, consideration of the specific facts is necessary. See Lowry v. Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835, unreported. However, the question of whether Munda acted within the scope of his employment is a question of fact. Lynd v. Univ. of Cincinnati (Nov. 23, 1999), Franklin App. No. 99AP-37, unreported. In this regard, matters involving credibility should be resolved by the trial court, and judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342, 350.
Thus, we must consider whether Munda treated the patient in his capacity as an employee of UC or was acting outside the scope of his employment with the university and acting as a physician in private practice. This court has addressed this issue many times in similar contexts beginning with Katko v. Balcerzak (1987), 41 Ohio App.3d 375.[1]
In Katko, this court determined that summary judgment was inappropriate because, at the very least, a factual issue existed concerning whether the physician was acting outside the scope of his employment. The physician testified that at all times he was acting on behalf of the state but also indicated that he treated patients at the university hospital only as private patients and billed them through the medical partnership with which he was associated. No part of the payment for his treatment of patients was paid to the state, although the partnership made a contribution to the university for rent and paid the university for certain administrative equipment. The physician indicated that, when treating patients, his services to the university were in the nature of teaching and research rather than rendering medical care for a fee. The physician's teaching duties consisted of teaching staff and students how to take care of patients. This court found that the services rendered by the physician to the plaintiff's decedent and receipt of such payment through the partnership, of which none was paid to the university, tended to indicate that the physician, in treating the patient, was acting outside the scope of his duties for the university and was conducting his own business.
This court followed the reasoning of Katko in York v. Univ. of Cincinnati Medical Ctr. (June 28, 1996), Franklin App. No. 95API09-1117, unreported. In that case, the physician was the chief of the department of neurosurgery at UC and a member of a professional association. The Court of Claims had found the physician was acting outside the scope of his employment with the university when he provided medical care to the patient and, therefore, as not entitled to immunity. This court affirmed the decision of the Court of Claims. In York, the physician had received $54,387.63 as compensation from the university and more than $700,000 for patient care services from the professional association of which he was an employee in the year he had rendered the services at issue. The professional association provided the physician's malpractice insurance. The physician billed the patient for his services through the professional association and only two percent of such fee was remitted to the university. The physician received no pay from the university for the services provided by him to the patient.
Similarly, in Balson v. Ohio State Univ. (1996), 112 Ohio App.3d 33, this court upheld, in part, a Court of Claims decision which found a physician was not entitled to personal immunity since he acted outside the scope of his employment with The Ohio State University Hospital ("OSUH"). This physician was a shareholder in a corporation that consisted of faculty members of OSUH who were licensed to practice medicine. He was paid $28,000 per year by the university and $121,920 by the corporation. The corporation billed the patient for the services performed and the physician received a salary from the corporation for his services. The corporation provided malpractice insurance. This court found the physician was treating a private patient in his capacity as an employee of the corporation.
This court also reversed a Court of Claims decision in Harrison v. Univ. of Cincinnati Hosp. (June 28, 1996), Franklin App. No. 96API01-81, unreported, in which the Court of Claims found the physician was acting within the scope of his employment with the state university in treating the patient. Again, the physician was employed by both the university and a professional corporation, receiving an annual salary of $32,000 from the university and $240,000 from the corporation. The corporation provided the physician's malpractice insurance and, in his contract with the corporation, the physician agreed to be legally responsible for the services and patient care he provided or supervised. The surgery was billed and collected by the corporation. Given these facts, this court reversed the Court of Claims and found that the physician was acting outside the scope of his employment with the university and was not entitled to statutory immunity.
In Allen v. Univ. of Cincinnati Hosp. (1997), 122 Ohio App.3d 195, this court reversed a decision by the Court of Claims that found the physician was not entitled to personal immunity. The physician was employed by the university and a corporation. He was the on-call attending physician when the plaintiff gave birth to a child at the university hospital and the child was delivered by a resident. Approximately two weeks later, the plaintiff was readmitted for a dilation and curettage procedure that was performed by a different resident. Once again, the physician was the supervising attending physician. This court found that there was no evidence that the physician saw the plaintiff as a private patient but, rather, the physician saw the plaintiff only in his capacity as the hospital's on-call physician supervising residents and it was merely a coincidence that the physician was present both times the plaintiff required treatment. This court stated that the facts in Allen were similar to the facts in Norman v. Ohio State Univ. Hosp. (1996), 116 Ohio App.3d 69.
In Norman, this court affirmed a decision of the Court of Claims which found the physician was acting within the scope of his employment with OSUH. The patient in Norman was admitted to OSUH's clinic in labor. The clinic provided medical care to the public and was staffed by residents who were supervised by fully-accredited physicians. The physician in Norman was the supervising obstetrician/gynecologist ("OB/Gyn") on call in the clinic and he was employed by OSUH as an assistant clinical professor in the OB-Gyn department. He also maintained a private practice.
The physician received an annual salary of $6,000 from the university and earned most of his income from his private practice. The physician was a member of a private practice group, Kingsdale Gynecological Associates ("KGA"), and also a member of a non-profit Ohio corporation, Reproductive Research and Educational Association, Inc. ("RREA"), by virtue of his faculty position. The private practice group, KGA, provided the physician's medical malpractice insurance. The physician saw his private practice patients at his private office and billed them for services through the private practice group, KGA. The non-profit corporation, RREA, was established to fund OB-Gyn research and education at OSUH. Such corporation billed and collected the fees generated by its members while on faculty call at the clinic. The corporation retained seventy percent of the fees, and the remaining thirty percent was paid to the physician generating the fees.
This court recognized that one of the determining factors in cases such as these is whether or not the patient is a private patient and, in Norman, the patient received all her care at the clinic. The physician's only contact with the patient was in such clinic and his private practice group, KGA, had no connection with the patient, other than providing malpractice insurance. The non-profit corporation, RREA, billed the patient, but such corporation was set up primarily for the benefit of OSUH. This court also pointed to the fact that, in Katko, York, Balson and Harrison, the physicians retained all or most of the fees they generated while the universities received, at best, a small percentage of those fees. In Norman, the non-profit corporation, RREA, retained one hundred percent of the fees since the physician did not accept the thirty percent he was entitled to receive. Because the physician in Norman rendered treatment to the patient as a clinic patient and not as a private patient, and because OSUH more greatly benefited financially from the physician's treatment of such patient, this court found that the physician was acting within the scope of his employment with OSUH when he treated the patient.
In Chitwood v. Univ. Medical Ctr. (May 5, 1998), Franklin App. No. 97API09-1235, unreported, this court reversed a Court of Claims decision which found the physician was not entitled to immunity. In Chitwood, the patient presented himself in the university's emergency room and was referred to the urology clinic. The patient underwent surgery performed by two residents and the physician was the attending surgeon. In that case, the university admitted in its answer and the parties had stipulated that the physician was acting within the scope of his employment with the university when he rendered care to the patient. The only legal conclusion that could be drawn from such stipulation was that the physician was entitled to immunity. This court also recognized that the facts in Chitwood were more similar to those in Allen than to York, Balson and Harrison. As in Allen, the physician in Chitwood did not render care to the patient privately, but only through the emergency room and urology clinic and while supervising residents.
Finally, in Wayman v. Univ. of Cincinnati (June 22, 2000), Franklin App. No. 99AP-1055, unreported, this court summarized that, from these cases, two major factors arise in determining whether a physician is acting outside the scope of his employment for a state university hospital, as follows, at page 2:
 * * * (1) [W]hether the patient was the physician's private patient or a patient of the university, and (2) the university's financial gain from the treatment rendered compared to the physician's gain from it. * * *
In this case, Munda was an employee of both the university and University Surgical Group of Cincinnati ("USGC"), a professional practice group. All of the professors of surgery at UC had to be members of USGC. USGC is a separate business entity from UC. The dean of the College of Medicine for UC reviews and approves the financial budgets of the practice corporations and the salaries of the professors, and has control over the programs of the practice corporations, but he does not have day-to-day control. Most of the money generated from the physicians engaged in the clinical practice, as members of the practice plan, remains with the practice plan for distribution. The physicians are not required to give any money to UC but the practice plan donates money back to UC to maintain the academic parts of their departmental programs. USGC pays the physicians' medical malpractice premiums. As a member of USGC, Munda signed a separate contract with USGC and received a W-2 separate from UC and received pension, life insurance and disability insurance from USGC. Munda was paid as an employee of both UC and USGC, receiving one-third of his pay from UC and two-thirds of his pay from USGC.
Although Munda saw Smith only as a patient through the hospital clinic, UC is now a private corporation. The hospital is a not-for-profit organization but has no affiliation with the state of Ohio.
Application of the two major factors recognized in Wayman, indicates that Munda was acting outside the scope of his employment in treating Smith. Here, the separate practice plan both billed and received the money arising out of the services rendered by members of the practice plan. Smith was treated at a private hospital. Munda's private practice plan, USGC, provided a separate W-2, malpractice insurance, pension, life insurance and disability insurance. The facts in this case are similar to those in York, Harrison and Wayman. Thus, the trial court erred in finding that Munda was acting within the scope of his employment with UC and entitled to personal immunity. Appellants' assignment of error is well-taken.
For the foregoing reasons, appellants' assignment of error is sustained, and the judgment of the Ohio Court of Claims is reversed and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT, P.J., and DESHLER, J., concur.
[1] Katko was superceded on other grounds by R.C. 2743.02(F) which mandates exclusive jurisdiction for actions asserted against a state employee in the Court of Claims. Katko permitted immunity decisions to be made by either the Court of Claims or the common pleas court.